**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**TABITHA PARKER,** *on behalf of herself and all others similarly situated*,

    **Plaintiff,**

v.                                                            **Case No.:**

**STELLAR PARTNERS, INC.,**

    **Defendant.**

_____/

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, TABITHA PARKER ("Plaintiff"), by and through undersigned counsel, and on behalf of herself, the Putative Classes set forth below, as well as in the public interest, brings the following Class Action as of right against Defendant, STELLAR PARTNERS, INC. ("Defendant" or "Stellar") under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a–x.

## I.     NATURE OF THE CASE

1.     This FCRA action arises out of Plaintiff's application for employment with Stellar. The FCRA imposes several important requirements on employers that use a consumer report for employment purposes (commonly known as a "background check"), which are designed to protect consumers like Plaintiff.

2.     Defendant is a corporate entity that has its primary offices in Tampa, Florida. Stellar is one of the largest airport retail operators in the United States, with more than thirty-eight locations across ten U.S. airports in fourteen different states.

3. As part of its hiring processes, Stellar and its subsidiaries use background checks to make employment decisions. Because such employment decisions are based in whole or in part on the contents of the background checks, Stellar is obliged to adhere to certain requirements of the FCRA.

4. Obtaining consumer reports in any context is illegal. To overcome the presumption of illegality and permit access to consumer reports in the employment context, employers like Stellar must provide to applicants like Plaintiff a written disclosure of their intent to obtain a consumer report for employment purposes. That disclosure, the FCRA demands, must be "in a document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i).

5. This provision implements what is commonly known as the "standalone disclosure" requirement.

6. After the presentation of the disclosure, the employer must obtain the applicant's written authorization to obtain the report. *Id.* § 1681b(b)(2)(A)(ii).

7. When using background reports for employment purposes, employers must, before declining, withdrawing, or terminating employment based in whole or in part on the contents of the report, provide job applicants like Plaintiff with a copy of their respective background reports as well as a written summary of their rights under the FCRA.

8. Providing a copy of the background report as well as a statement of consumer rights before making a final adverse employment decision arms the nation's millions of job applicants with the knowledge and information needed to challenge inaccurate, incomplete, and misleading consumer reports. The FCRA is designed to permit

individuals whose reports are inaccurate with ample time to identify the inaccuracies and correct them before the employer has made an employment decision. Even if reports are accurate, the FCRA demands that applicants receive them and their written FCRA rights so that they may preemptively discuss negative information with the potential employers.

9. Plaintiff brings a nationwide class claim against Stellar under 15 U.S.C. § 1681b(b)(2), for its systematic, willful failure to provide to applicants a standalone disclosure of its intent to obtain consumer reports for employment purposes.

10. Plaintiff also brings nationwide class claims against Stellar under 15 U.S.C. § 1681b(b)(3) because, as a systematic omission in its hiring process, Stellar failed to provide Plaintiff and other consumers against whom it took adverse employment actions with a copy of the background report or a summary of rights under the FCRA before taking that adverse employment action.

11. This claim involves significant involvement in Stellar's hiring process by non-party Osa Consulting Group, LLC ("OCG").

## II.   JURISDICTION AND VENUE

12. The Court has subject-matter jurisdiction under the FCRA, 15 U.S.C. §§ 1681n and 1681p.

13. Venue is proper in this Court, because all of the events giving rise to Plaintiff's claims took place in this District and Division. Plaintiff applied for employment here, and Defendant failed in its FCRA duties here.

## III.   PARTIES

14. Plaintiff is a "consumer" as protected and governed by the FCRA.

15. Defendant Stellar is a corporation incorporated in and existing under the laws of the State of Florida with its principal place of business located at 12750 citrus Park Lane, Tampa, FL, which markets its services and employs consumers like Plaintiff throughout the United States, including within this District.

16. At all times pertinent to this Complaint, Defendant Stellar was a "user" of consumer reports as defined and governed by the FCRA.

17. Non-party Osa Consulting Group, LLC ("OCG") is a consumer reporting agency ("CRA") and reseller as defined and governed by the FCRA.

### IV. FACTUAL ALLEGATIONS

**A.    Plaintiff's Application for Employment.**

18. On or around August 9, 2019, Plaintiff sought employment to perform work for Stellar.

19. Plaintiff interviewed with Defendant on August 9, 2019, who offered her a position conditioned on his passing a background check on or around August 13, 2019.

20. On or around August 13, 2019, Plaintiff completed Stellar paperwork including documents purporting to authorize Stellar to procure a consumer report on Plaintiff from OCG for hiring purposes. None of these materials included a standalone disclosure that was compliant with 15 U.S.C. § 1681b(b)(2).

21. Defendant then advised Plaintiff that her start date would be delayed because Stellar had not yet received the results of her background check from OCG.

22. On August 22, 2019, Plaintiff received an email from Defendant indicating that "due, in part, to the contents of this consumer report, a decision is pending regarding

your application for employment . . . . You have the right to dispute the accuracy of the information in this report by contacting the consumer reporting agency listed below directly."

23. This email did not include the complete report on which Stellar based its decision to delay Plaintiff's employment.

24. Plaintiff was informed in the same August 22, 2019 email that if she wished to dispute the accuracy of the information in the report she was to contact the "Freeh Group International Solutions."

25. Many entries contained the report, including allegations of theft, were inaccurate or simply did not belong to Plaintiff.

26. Plaintiff attempted to reach Freeh Group and OCG, and in fact spoke with John Osa, but was informed she had no right to dispute the report and refused Plaintiff's attempts to dispute the inaccuracies.

27. Plaintiff contacted Stellar to advise it of her inability to appeal the inaccurate results with OCG on August 24, 2019.

28. On or about August 26, 2019, Defendant, through Christine Suhs, informed Plaintiff that she must contact TransUnion, whom Ms. Suhs now alleged supplied the information contained in the report, in order to dispute the report. Ms. Suhs also informed Plaintiff that she must dispute each alleged arrest by contacting each arresting agency directly.

29. On or about August 26, 2019, Plaintiff received from Stellar a hard copy of the complete report. This of course occurred long after Stellar's decision to delay Plaintiff's employment.

30. On or about August 27, 2019, Plaintiff again attempted to reach the CRA listed on the report, OCG, through John Osa, but OCG refused to cooperate and reinvestigate Plaintiff's dispute of the report.

31. On or about August 27, 2019, Plaintiff informed Defendant, through Josh Howe, that the CRA would not allow her to dispute the report, that the background check does not match, and Mr. Howe instructed Plaintiff to again contact Ms. Suhs.

32. On or about August 28, 2019, Ms. Suhs again instructed Plaintiff to dispute the report with TransUnion and the arresting agencies and not with Freeh Group or OCG. Plaintiff requested her full file per the FCRA and, after multiple requests, is provided a thirty-two page report from Stellar.

33. On September 4, 2019, Defendant sent to Plaintiff a Final Notice of Adverse Action stating that, in part, due to the information on the background check Stellar received from OCG, Stellar refused to hire Plaintiff. Thus, Plaintiff lost her job, but this notice came long after Stellar improperly delayed Plaintiff's employment based on the contents of a consumer report Plaintiff had not seen.

**B.   Stellar's Practices and Policies.**

34. Stellar has created and implemented national, uniform hiring and staffing policies, procedures, and practices under which it and its subsidiaries and vendors operate.

Those policies, procedures, and practices cover the use of "background checks" or "consumer reports" to screen potential employees for Stellar and its vendors.

35. Stellar routinely uses consumer reports to screen prospective employees and those who would work for Stellar.

36. Stellar also routinely fails to provide applicants with a standalone disclosure of its intent to obtain consumer reports about them. Therefore, any written authorization Stellar obtains is faulty and legally invalid.

37. Stellar subsequently violates the FCRA with each background check it obtains about an applicant, and did so for each member of the Class described below.

38. As a matter of practice, Stellar regularly fails to provide copies of the FTC or CFPB notice of rights to job applicants against whom it takes an adverse action based in whole or part on a consumer report, before taking that adverse action.

39. As a matter of course, Stellar uses the same business process for obtaining and using consumer reports as it did with Plaintiff and members of the Class described below. Stellar routinely as a matter of course takes adverse actions against applicants without first providing them with a copy of the report and summary of their FCRA rights.

40. As a result of these FCRA violations, Stellar is liable to Plaintiff, and to each Class Member, for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

41. Stellar's conduct and omissions were willful. Because the FCRA was enacted in 1970, Stellar has had years to become compliant but has failed to do so.

42. Stellar, a nationwide employer, was aware of obligations under the FCRA as they relate to employment because it hired OCG not only to perform its background checks but also to (attempt to) provide Stellar's adverse-action notices to job applicants. Stellar is a large corporation with in-house counsel and regularly engages outside counsel, meaning it had ample means and opportunity to seek legal advice regarding its FCRA responsiblities. Stellar therefore knew of the requirements imposed upon it by the FCRA, and failed to craft a system that would ensure compliance with those requirements.

## V.   LEGAL REQUIREMENTS

43. The FCRA prohibits the obtaining of consumer reports in any context unless certain requirements are met. The most-fundamental of these requirements in the employment context is the standalone disclosure requirement.

44. Section 1681b(b)(2) of the FCRA sets out the standalone disclosure requirement:

> **In general.** Except as provided in [circumstances not present here], a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless--
>
> > (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
> >
> > (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

45. Failing to provide any disclosure at all of course violates the statute, but so too does the provision of a disclosure that is not standalone. Adding superfluous information, inapplicable state-law notices or warnings, or making the document unnecessarily wordy an confusing likewise violates the statute.

46. The purpose of this requirement is to give applicants unequivocal notice of the employer's intent to obtain a background check and to further confirm that the consumer authorizes such through his or her signature.

47. Section 1681b(b)(3)(A) of the FCRA regulates the conduct of any person who uses a "consumer report" to take an adverse action against any employees or prospective employees as follows:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates --
>
> (i) a copy of the report; and
>
> (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Federal Trade Commission under section 1681g(c)(3) of this title.

48. The Act defines adverse action as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee," and "an action taken or determination that is adverse to the interests of the consumer." 15 U.S.C. § 1681a(k)(1)(B)(ii), (iv).

49. The statute notably does not indicate a decision must be final and irreversible to fit the definition of adverse.

50. The purpose of § 1681b(b)(3)(A) is to provide a prospective or current employee a sufficient amount of time to review the consumer report, correct any inaccuracies, to notify the prospective employer of these inaccuracies before an adverse action is taken and generally to discuss the contents of the report with the prospective employer so that the applicant may still be hired.

51. This statutory requirement was enacted by Congress expressly to protect consumer privacy by restricting the circumstances under which a person (in this instance Stellar) could obtain and use a consumer's personal information consumer report.

52. In enacting this FCRA provision, Congress also expressly sought to guarantee important material information be provided to Plaintiff and consumers like her with respect to employer use of a consumer report for an employment adverse action.

53. Plaintiff and each putative Class Member has been substantively harmed and injured by Stellar in the violation of their personal privacy and in the deprivation of the congressionally mandated information.

## VI. STELLAR ACTED WILLFULLY

54. Stellar knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission and Consumer Financial Protection Bureau. Stellar obtained or had available substantial written materials, which apprised it of its duties under the FCRA.

55. An employer like Stellar is absolutely forbidden from obtaining a background check without first providing a standalone disclosure. Such has been the

subject of considerable litigation, giving Stellar ample notice of the requirement and the ability to become compliant.

56. Before a person takes an adverse employment action, it must provide two documents to the prospective employee. *See* Letter from Clark W. Brinckerhoff to Erick J. Weisberg (June 27, 1997), FTC Informal Staff Letter ("Brinckerhoff Letter II") (noting that taking action a period of five business days after notice "appears reasonable."); *Williams v. Telespectrum, Inc.,* Civil Action No. 3:05cv853 (E.D. Va. 2006), Report and Recommendation of Magistrate Judge Hannah Lauck dated November 7, 2006, adopted by Judge R. Payne January 8, 2005, (holding that a user of a consumer report must provide to the consumer a copy of the report and disclosure of rights a sufficient amount of time before it takes adverse action so that the consumer can rectify any inaccuracies in the report, and simultaneous provision of the report does not satisfy this requirement); *Kelchner v. Sycamore Manor Health Ctr.*, 305 F. Supp. 2d 429, 435 (M.D. Pa. 2004); (holding a reasonable period for the employee to respond to disputed information is not required to exceed five business days following the consumers receipt of the consumer's report from the employer); *Beverly v. Wal-Mart Stores, Inc.*, No. 3:07-cv-469 (E.D. Va. 2009) (consent Order providing ChoicePoint mailing of Adverse Action Notices on behalf of its customers shall occur no earlier than five business days after the mailing of the pre-adverse action notices).

57. To ensure knowing compliance with the FCRA, Congress requires that before any consumer reporting agency may provide consumer reports on an applicant, the reporting agency must have obtained a certification from the employer that it will comply

with 15 U.S.C. § 1681b(b)(3) whenever the employer decides to take adverse action based in whole or in part on the consumer report.  15 U.S. C. § 1681b(b)(1)(A).

58. Discovery will show that Stellar knowingly executed a certification providing that it would comply with the various provisions of the FCRA, including those regarding the standalone disclosure and whenever adverse action was contemplated or taken based in whole or in part on information contained in a consumer report.

59. Despite its certification, Stellar knowingly violated 15 U.S.C. §§ 1681b(b)(2) and (b)(3).

60. Despite knowing of these legal obligations, Stellar acted consciously in breaching its known duties and depriving Plaintiff and other members of the putative Classes of their rights under the FCRA.

61. As a result of these FCRA violations, Stellar is liable to Plaintiff and to each Class Member for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) for the violations alleged herein, and for attorneys' fees and costs pursuant to §§ 1681n and 1681o.

## VII.   CLASS ACTION ALLEGATIONS

**DISCLOSURE CLASS – VIOLATION OF THE FCRA § 1681b(b)(2)**

62. Plaintiff restates each of the allegations in Paragraphs 18 through 61 as if set forth at length herein.

63. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action for herself and on behalf of a class (the "Disclosure Class"), or which she is a member:

> **All consumers in the United States who applied for a position or promotion at Stellar for the period five years before the filing of this lawsuit.**

**ADVERSE ACTION CLASS – VIOLATION OF THE FCRA § 1681b(b)(3)(A)(i)**

64. Plaintiff restates each of the allegations in Paragraphs 18 through 61 as if set forth at length herein.

65. Pursuant to Florida Rule of Civil Procedure 1.220 and 15 U.S.C. § 1681b, Plaintiff brings this action for herself and on behalf of a class (the "Adverse Action Class"), or which she is a member:

> **All consumers in the United States against whom Stellar took adverse employment action based, in whole or in part, on information contained in a consumer report obtained within five years preceding the filing of this lawsuit.**

66. **Numerosity.** The Classes are so numerous that joinder of all members is impracticable. Based on information and belief, the Classes are comprised of at least thousands of members who are geographically dispersed throughout the country so as to render joinder of all Class Members impracticable. The names and addresses of the Class Members are identifiable through documents maintained by Stellar, and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

67. **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all members of the Classes. The total focus of the litigation will be Stellar's uniform conduct and procedures; whether Stellar provided the required disclosures and notices; when it did so; and, whether Stellar acted willfully in its failure to design and implement procedures to assure compliant delivery and/or timing

of these notices. The appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. § 1681n is a common question for members of the Classes.

68. **Typicality.** Plaintiff's claims are typical of the other Class Members' claims. As described above, Defendant Stellar uses common practices and automated systems in committing the conduct that Plaintiff alleges damaged her and the Classes. Plaintiff seeks only statutory and punitive damages for her classwide claims and, in addition, Plaintiff is entitled to relief under the same causes of action as the other members of the Class. Stellar uniformly breached the FCRA by engaging in the conduct described above, and these violations had the same effect on each member of the Class.

69. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff's interests coincide with, and are not antagonistic to, other Class Members' interests. Additionally, Plaintiff has retained counsel experienced and competent in complex, commercial, multi-party, consumer, and class-action litigation. Plaintiff's counsel has prosecuted complex FCRA class actions across the country.

70. **Superiority.** Questions of law and fact common to the Classes predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Stellar's conduct. It would be virtually impossible for the members of the Class to, individually, effectively redress the classwide wrongs done to them, particularly in light of the fact that the claims are in part based on the failure of Stellar to give Class Members the

proper disclosure and notice. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts.

71.     Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Stellar's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

72.     There are no known unusual legal or factual issues that would cause management problems not normally and routinely handled in class actions. Because Class Members in each Class that Plaintiff seeks to represent may be unaware that their rights have been violated or, if aware, would be unable to litigate their claims on an individual basis because of their relatively small damages, a class action is the only practical proceeding available.  To Plaintiff's knowledge, no other similar actions are pending against Defendant.  This forum is appropriate for litigation because Defendants conduct business in this District and the conduct complained of herein occurred here.

### VIII.   CAUSES OF ACTION

**COUNT ONE: VIOLATIONS OF 15 U.S.C. § 1681b(b)(2) BY STELLAR**
**Class Claim**

73.     Plaintiff incorporates by reference those paragraphs set out above, 1 through 61, as though fully set forth herein.

74. Stellar's failure to provide members of the Class with a standalone disclosure before obtaining consumer reports for employment purposes violated 15 U.S.C. § 1681b(b)(2)(A).

75. If Stellar then obtained an authorization from applicants, that authorization fails because it was not based on an appropriate disclosure.

76. Stellar's obtaining and use of Class Member consumer reports without compliance with § 1681b(b)(2) violates 15 U.S.C. § 1681b(f) as well as § 1681b(b)(2).

77. The conduct, action, and inaction of Stellar was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Disclosure Class members under 15 U.S.C. § 1681b(b)(2).

78. Defendant knew or should have known of its legal obligations under the FCRA. These obligations are well-established in the plain language of the statute and published circuit court authority. Defendant obtained or otherwise had available substantial written materials that apprised Defendant of its duties under the FCRA. Any reasonable employer knows of the existence of these FCRA mandates, or can easily discover their substance.

79. Moreover, at the time Defendant failed to follow 15 U.S.C. § 1681b(b)(2), a plethora of FTC opinions and caselaw advising how Defendant should conduct itself existed.

## COUNT TWO: VIOLATIONS OF 15 U.S.C. § 1681b(b)(3)(A) BY STELLAR
### Class Claim

80. Plaintiff incorporates by reference those paragraphs set out above, 1 through 61, as though fully set forth herein.

81. Stellar's failure to provide members of the Class with a copy of the consumer report upon which it based its decision to take the adverse action, prior to taking such action, violated 15 U.S.C. § 1681b(b)(3)(A).

82. Stellar's obtaining and use of Class Member consumer reports without compliance with § 1681b(b)(3) violates 15 U.S.C. § 1681b(f).

83. The conduct, action, and inaction of Stellar was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Adverse Action Class members under 15 U.S.C. § 1681b(b)(3)(A). Defendant knew or should have known of its legal obligations under the FCRA. These obligations are well established in the plain language of the statute and published circuit court authority. Defendant obtained or otherwise had available substantial written materials that apprised Defendant of its duties under the FCRA. Any reasonable employer knows of the existence of these FCRA mandates, or can easily discover their substance.

84. Moreover, at the time Defendant failed to follow 15 U.S.C. § 1681b(b)(3)(A) a plethora of FTC opinions and case law existed.

*Plaintiff's First Concrete Injury:*
*Economic Damages and Lost Job*

85. As a result of Defendant's forgoing actions Plaintiff suffered a concrete economic injuries when she lost a job opportunity and income.

### *Plaintiff's Second Concrete Injury: Informational Injury*

86. Plaintiff suffered a concrete informational injury because Defendant failed to provide Plaintiff with information to which she was entitled to by statute, namely a standalone disclosure, before obtaining a consumer report for employment purposes about her.

87. By enacting Section 1681b(b)(2), Congress codified a new right—to information in the form of a standalone disclosure of the employer's intent to obtain a consumer report for employment purposes.

88. Plaintiff suffered a concrete informational injury because Defendant failed to provide Plaintiff with information to which she was entitled to by statute, namely a standalone disclosure.

89. Plaintiff's "inability to obtain [that] information" is therefore, standing alone, "a sufficient injury in fact to satisfy Article III." *Spokeo Inc. v. Robins,* 136 S. Ct. 1540, 1549 (2016).

### *Plaintiff's Third Concrete Injury: Inability to Learn of the Contents of Her Report and Tell Her Side of the Story in Time to Save Her Job.*

90. Defendant's failure to provide timely notice deprived Plaintiff and Class Members of the opportunity to learn about the information in their consumer report and tell Defendant their side of the story before Defendant took adverse action. Thus, Plaintiff was denied the opportunity to determine if the information contained in her consumer

report was accurate, to plead her case, and to understand how it might affect her future efforts to obtain employment.

91. With these two recognized injuries directly traceable to Defendant's failure to timely provide the notices required by § 1681b(b)(3), Plaintiff unquestionably has established Article III standing.

92. Plaintiff and other members of the Class are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Stellar in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n.

### IX. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and the Classes pray for relief as follows:

a) That an order be entered certifying the proposed Classes under Rule 1.220 of the Florida Rules of Civil Procedure and appointing Plaintiff and her Counsel to represent the Class;

b) That judgment be entered for the proposed Classes against Defendant Stellar for statutory damages and punitive damages for violations of 15 U.S.C. § 1681b, pursuant to 15 U.S.C. § 1681n;

c) That the Court award costs and reasonable attorneys' fees, pursuant to 15 U.S.C. §§ 1681n and 1681o;

d) That the Court grant such other and further relief as may be just and proper, including but not limited to any equitable relief, that may be permitted.

**A TRIAL BY JURY IS DEMANDED.**

Dated this 7th day of February, 2020.

                Respectfully submitted,

                /s/ Brandon J. Hill
                **BRANDON HILL**
                Florida Bar No. 37061
                **WENZEL FENTON CABASSA, P.A.**
                1110 North Florida Ave., Suite 300
                Tampa, FL 33602
                Direct Dial: 813-337-7992
                Telephone: 813-224-0431
                Facsimile: 813-229-8719
                Email: bhill@wfclaw.com
                Email: jcornell@wfclaw.com
                Email: rcooke@wfclaw.com

                Craig C. Marchiando
                Florida Bar No. 1010769
                **CONSUMER LITIGATION ASSOCIATES, P.C.**
                763 J. Clyde Morris Blvd., Suite 1-A
                Newport News, VA 23601
                Tel. (757) 930-3660
                Fax (757) 930-3662
                Email: craig@clalegal.com

                ***Attorneys for Plaintiff***