UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TABITHA PARKER, *on behalf of
herself and all others similarly situated*,

     Plaintiff,

v.                               CASE NO.:  8:20-cv-292-T-35TGW

STELLAR PARTNERS, INC.,
OSA CONSULTING GROUP, LLC,
and TRANS UNION, LLC,

     Defendants.

_____/

**FIRST AMENDED CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL**

    Named Plaintiff, Tabitha Parker, with Defendant Stellar Partners, Inc.'s written consent, and pursuant to Fed. R. Civ. P. 15(a)(1)(B)(2), files this First Amended Complaint against Defendants Stellar Partners, Inc. ("Stellar"), Osa Consulting Group, LLC ("Osa") and Trans Union, LLC ("TransUnion"), under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a–x.  In further support thereof, Plaintiff states as follows:

## I.     NATURE OF THE CASE

### *Overview of Class Claims Against Defendant Stellar*

    1.    This FCRA action arises out of Plaintiff's application for employment with Defendant Stellar Partners.  Defendant Stellar is one of the largest airport retail operators in the United States, with more than thirty-eight locations across ten U.S. airports in fourteen different states.

2.      As part of its hiring processes, Stellar and its subsidiaries use background checks to make employment decisions. Because such employment decisions are based in whole or in part on the contents of the background checks, Stellar is obliged to adhere to certain requirements of the FCRA.

3.      Defendant Stellar hired Defendant OSA to perform a pre-employment background check on Plaintiff, the reporting of which information is subject to the FCRA's strictures. The FCRA imposes several important accuracy and transparency requirements on consumer reporting agencies ("CRAs") like Defendant Osa, which are designed to protect consumers like Plaintiff.

4.      Such protections also apply to Defendant Trans Union in its role as a CRA. Discovery will confirm that Trans Union supplied information to Osa, which Osa then repackaged and furnished to Stellar as part of Stellar's background-check process for applicants like Plaintiff.

5.      Obtaining consumer reports in any context is illegal. To overcome the presumption of illegality and permit access to consumer reports in the employment context, employers like Stellar must provide to applicants like Plaintiff a written disclosure of their intent to obtain a consumer report for employment purposes. That disclosure, the FCRA demands, must be "in a document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i).  This provision implements what is commonly known as the "standalone disclosure" requirement.

6.      After the presentation of the disclosure, the employer must obtain the applicant's written authorization to obtain the report. *Id.* § 1681b(b)(2)(A)(ii).

7.    When using background reports for employment purposes, employers must, before declining, withdrawing, or terminating employment based in whole or in part on the contents of the report, provide job applicants like Plaintiff with a copy of their respective background reports as well as a written summary of their rights under the FCRA.

8.    Providing a copy of the background report as well as a statement of consumer rights before making a final adverse employment decision arms the nation's millions of job applicants with the knowledge and information needed to challenge inaccurate, incomplete, and misleading consumer reports. The FCRA is designed to permit individuals whose reports are inaccurate with ample time to identify the inaccuracies and correct them before the employer has made an employment decision. Even if reports are accurate, the FCRA demands that applicants receive them and their written FCRA rights so that they may preemptively discuss negative information with the potential employers.

9.    Under Count I, Plaintiff brings a nationwide class claim against Stellar under 15 U.S.C. § 1681b(b)(2), for its systematic, willful failure to provide to applicants a standalone disclosure of its intent to obtain consumer reports for employment purposes.

10.    Under Count II, Plaintiff also brings nationwide class claims against Stellar under 15 U.S.C. § 1681b(b)(3) because, as a systematic omission in its hiring process, Stellar failed to provide Plaintiff and other consumers against whom it took adverse employment actions with a copy of the background report or a summary of rights under the FCRA before taking that adverse employment action.

### *Overview of Class Claims Against Defendant Osa*

11.     Besides the class claims pleaded against Defendant Stellar, Plaintiff also brings separate class claims against Defendant Osa.

12.     Because Defendant Osa sold Stellar consumer reports, it was obligated under the FCRA to employ reasonable procedures designed to ensure the maximum possible accuracy of the information it reports. *See* 15 U.S.C. § 1681e(b).

13.     The FCRA imposes specific requirements when reports are, like here, issued for employment purposes. When furnishing employment-purposed reports and they contain information likely to adversely affect the subject consumer's ability to obtain employment, the CRA must either: (1) notify the consumer it is providing such report at the time it provides the report; or (2) have in place strict procedures designed to ensure the public-record information reported is complete and up-to-date. 15 U.S.C. § 1681k.  Compliance with section 1681k is not optional, and comes into play whenever a CRA furnishes a consumer report for employment purposes.

14.     Apart from accuracy provisions that have genuine teeth, another of the FCRA's primary goals is transparency. Consumers have the absolute right to learn all of the information—including sources of that information—CRAs possess about them. 15 U.S.C. § 1681g. All a consumer need do is contact the CRA and ask for his or her file disclosure. *Id.*

15.     Part of both the accuracy and transparency provisions is the FCRA's robust dispute and reinvestigation requirements. A CRA is duty bound to conduct a reasonable investigation of a consumer's dispute of information appearing on a consumer report or in a file disclosure. 15 U.S.C. § 1681i.

16.     In Plaintiff's circumstances, Defendant Osa failed on all of these counts. It created a consumer report about Plaintiff for Stellar that was rife with errors, both inaccurately attributing to her criminal history that was not hers, and failing to update other items of criminal history to their most-recent statuses. And it failed to provide Plaintiff at-the-time notice that it was furnishing the report to Stellar.

17.     When Plaintiff sought to dispute the inaccuracies, Defendant Osa would do nothing for her. It directed her to take the problems up with Stellar, and would not provide her with a copy of the report it furnished to Stellar.

18.     Without the ability to reasonably dispute the inaccuracies with Defendant Osa, Plaintiff wrote to Defendant twice and requested her file disclosure. Defendant Osa failed to respond to either request.

19.     Put simply, Defendant Osa operates in exactly the opposite way Congress envisioned when it enacted the FCRA. Rather than employing systems to accurately report information, appropriately notify consumers when reporting derogatory information about them, and providing the transparency of allowing consumers to learn all the information CRAs possess and trade about them, Defendant Osa works in secret, keeping all information to itself, and outright refuses to own up to its mistakes and make them right. Lawsuits like this one are therefore the only relief for consumers like Plaintiff.

20.     As a result, Plaintiff brings an additional nationwide class claim against Defendant Osa under 15 U.S.C. § 1681k. At the time Defendant Osa created and provided the report about Plaintiff to Stellar, it did not have in place strict procedures designed to ensure the public-record information it reported was complete and up-to-date. Likewise, Defendant Osa

did not provide Plaintiff with notice it was reporting such information to Stellar at the time it did so.

21.     Plaintiff also brings a nationwide class claim against Defendant Osa for violations of 15 U.S.C. § 1681g. When a consumer contacts a CRA and requests his or her full file disclosure, the CRA must comply and provide all information, including the sources of that information. Again, when Plaintiff wrote to Defendant Osa to exercise this right, Defendant gave her nothing.

22.     Additionally, Plaintiff brings a nationwide class claim under 15 U.S.C. § 1681i against Defendant Osa because when she contacted it to dispute the contents of her report, Osa was required to reasonably investigate her dispute. Defendant Osa instead did nothing.

### *Overview of Class Claims Against Trans Union*

23.     Finally, as to the third-named Defendant, Trans Union, the report Defendant Osa sold to Stellar about Plaintiff included information obtained from Defendant TransUnion. Because Defendant Osa failed to provide Plaintiff with her full file disclosure, Plaintiff was unable to learn about TransUnion's true role in the process.

*24.*     And despite providing consumer reports for employment purposes to Defendant Osa, TransUnion did not provide Plaintiff with at-the-time notice it was providing negative information to Osa at the time it did so. Because the information TransUnion reported to Defendant Osa was not complete and up-to-date, TransUnion violated both subsections of 15 U.S.C. § 1681k.

6

***Plaintiff's Individual Claims***

25.     Besides the class claims set forth above and herein, Plaintiff brings an individual claim against Defendants Osa and TransUnion for their violations of 15 U.S.C. § 1681e(b). Defendants Osa and TransUnion produced inaccurate reports about Plaintiff without having reasonable procedures designed to ensure the maximum possible accuracy of the information they reported.

## II.     JURISDICTION AND VENUE

26.     The Court has subject-matter jurisdiction under the FCRA, 15 U.S.C. §§ 1681n and 1681p.

27.     Venue is proper in this Court, because all of the events giving rise to Plaintiff's claims took place in this District and Division. Plaintiff applied for employment here, and Defendants failed in their FCRA duties here.

## III.     PARTIES

28.     Plaintiff is a "consumer" as protected and governed by the FCRA.

29.     Defendant Stellar is a corporation incorporated in and existing under the laws of the State of Florida with its principal place of business located at 12750 citrus Park Lane, Tampa, FL, which markets its services and employs consumers like Plaintiff throughout the United States, including within this District.

30.     At all times pertinent to this Complaint, Defendant Stellar was a "user" of consumer reports as defined and governed by the FCRA.

31.     Defendant Osa Consulting is a limited liability entity organized in and existing under the laws of the State of Florida with its principal place of business located in Fort

Lauderdale, Florida, which markets and performs its services throughout the United States, including within this District.

32.    Defendant Osa is a consumer reporting agency as defined and governed by the FCRA.

33.    Defendant TransUnion a limited liability entity with its principal place of business in Illinois, which markets and performs its services throughout the United States, including within this District.

34.    Defendant TransUnion is a consumer reporting agency as defined and governed by the FCRA.

## IV.    <u>FACTUAL ALLEGATIONS</u>

**A.    Plaintiff's Application For Employment.**

35.    On or around August 9, 2019, Plaintiff sought employment with Stellar.

36.    Plaintiff interviewed with Stellar on August 9, 2019, who offered her a position conditioned on her passing a background check on or around August 13, 2019.

37.    On or around August 13, 2019, Plaintiff completed Stellar paperwork including documents purporting to authorize Stellar to procure a consumer report on Plaintiff from Defendant Osa for employment purposes.

38.    None of these materials included a standalone disclosure that was compliant with 15 U.S.C. § 1681b(b)(2).

39.    Stellar then advised Plaintiff that her start date would be delayed because Stellar had not yet received the results of her background check from Defendant Osa.

40.     On August 22, 2019, Plaintiff received an email from Stellar indicating that "due, in part, to the contents of this consumer report, a decision is pending regarding your application for employment . . . . You have the right to dispute the accuracy of the information in this report by contacting the consumer reporting agency listed below directly."

41.     This email did not include the complete report on which Stellar based its decision to delay Plaintiff's employment.

42.     Plaintiff likewise did not receive notice from Defendants that they were furnishing a consumer report for employment purposes that contained potentially harmful information.

43.     Plaintiff later received a letter dated August 22, 2019 from Stellar stating that if she wished to dispute the accuracy of the information in the report she was to contact "Freeh Group," a non-party to this action that appears to have had nothing whatsoever to do with Plaintiff, or Plaintiff's consumer report. Apparently, Defendant Osa had been using documents with "Freeh Group" named as the consumer reporting agency without Freeh Group's knowledge.

44.     While that letter, which is commonly known as a "pre-adverse-action notice," is by law required to contain the entire report on which Stellar is basing its hiring decision, the letter did not. It included only the first four pages of the report.

45.     Many entries from the report communicated in the email from Stellar, including allegations of theft, were inaccurate or simply did not belong to Plaintiff.

46.     On August 23, 2019 Plaintiff called the phone number provided by Stellar's letter and was directly connected to Mr. Osa, who answered the phone and identified that he works for Defendant "Osa Consulting."

47.     Mr. Osa informed Plaintiff she had no right to dispute the report and refused Plaintiff's attempts to dispute the inaccuracies.

48.     Plaintiff asked Mr. Osa about the erroneous report and is advised that any questions about the report must be directed by Plaintiff to Stellar Partners directly. She also asked for a full copy of her report to Stellar, which Mr. Osa refused to provide.

49.     Mr. Osa further advised Plaintiff that he is an ex-FBI agent and has access to all her information and provided the requested information to Stellar.

50.     During the call Plaintiff explained to Mr. Osa that her report is on Osa's letterhead and, further, that under the FCRA she is entitled to dispute the information being reported because it was incorrect.

51.     In response, Mr. Osa merely informed Plaintiff states that it is "not his problem" that she is a "bad apple" and to take it up with Stellar Partners. Mr. Osa then hung up on Plaintiff.

52.     Plaintiff attempted to call back but is sent directly to voicemail.

53.     Plaintiff attempted to call Defendant Osa Consulting back the next day, August 24, 2019, but was ignored.

54.     Plaintiff then informed Christine Suhs, an employee of Stellar, that Defendant Osa refused to speak with her or provide her with a copy of her report.

55.     On around August 26, 2019, Stellar's Ms. Suhs informed Plaintiff that she must contact TransUnion, whom Ms. Suhs then stated supplied the information contained in the report, in order to dispute the report. Ms. Suhs also incorrectly informed Plaintiff that she must dispute each alleged arrest by contacting the arresting agencies directly.

56.     On around August 26, 2019, Plaintiff finally received from Stellar a hard copy of the complete thirty-two-page report. This of course occurred long after Stellar's decision to delay Plaintiff's employment, and after she contacted Defendants Osa trying to dispute the contents.

57.     The report is rife with inaccuracies and errors. In fact, many of the entries in the report, including allegations of theft, simply do not belong to Plaintiff.

58.     By way of example, the report states that on August 11, 2007 Ms. Parker was charged with a "Misdemeanor for Retail Theft," found guilty, and sentenced to 15 days in the county jail. But Plaintiff has never been arrested for theft, never been convicted of a crime, nor has she ever been to jail.

59.     Worse still, the report erroneously alleges Plaintiff was charged with the second-degree felony for aggravated battery on a pregnant female in Hillsborough County, Florida, and even includes a mugshot. But Plaintiff has never been charged with a felony ***and the photograph in the mugshot is not Plaintiff***, but another person entirely.

60.     The report is full of similar errors wrongly attributing to Plaintiff crimes she simply did not commit, including an additional felony charge for passing altered or forged instruments and larceny, an erroneous charge for misdemeanor larceny, and another

misdemeanor charge for allegedly violating a pre-trial release. Simply put, these criminal charges belonged to someone else and they were costing Plaintiff her job with Stellar.

61.     On around August 27, 2019, Plaintiff again attempted to reach the CRA listed on the report, Osa, through John Osa, but Osa refused to cooperate and reinvestigate Plaintiff's dispute of the inaccuracies in the report.

62.     Plaintiff informed a different Stellar individual that the CRA would not allow her to dispute the report, that the background check does not match her background, and that individual instructed Plaintiff to again contact Ms. Suhs.

63.     On around August 28, 2019, Ms. Suhs again instructed Plaintiff to dispute the report with TransUnion and the arresting agencies and not with Defendant Osa. Plaintiff requested—in writing—from Defendant Osa her full file as permitted the FCRA but, after multiple requests, is provided just the thirty-two page report Osa provided to Stellar.

64.     Sometime thereafter, Plaintiff received a Final Notice of Adverse Action letter dated September 4, 2019 and stating that, in part due to the information on the background check Stellar received, Stellar would not hire Plaintiff.

65.     Plaintiff therefore lost her job, but this notice came long after Stellar improperly delayed Plaintiff's employment based on the contents of a consumer report Plaintiff had not seen.

66.     Discovery will show that part of the report Defendant Osa provided to Stellar, under the heading "Comprehensive Report," is a report purchased from TransUnion that Defendant Osa merely repackage and sell as its own.

67.     Regardless of what Defendant Osa does with the information TransUnion provides, TransUnion is obligated under the FCRA to provide accurate information to resellers like Osa in the first instance.

68.     Defendant Osa, for its part, also has an obligation to employ reasonable procedures to ensure maximum possible accuracy of the information TransUnion provides them before they include it in its own reports. Yet, it failed to meet these requirements.

69.     TransUnion likewise did not meet its accuracy obligations, providing Osa with a report containing the errors and inaccuracies described above.

**B.    Plaintiff Suffered Multiple Concrete Injuries.**

### *Economic Damages and Lost Job*

70.     As a result of Defendants' forgoing actions Plaintiff suffered a concrete economic injuries when she lost a job opportunity and income.

### *Plaintiff's Second Concrete Injury:*
### *Informational Injury*

71.     Plaintiff suffered a concrete informational injury because Defendant Steller failed to provide Plaintiff with information to which she was entitled to by statute, namely a standalone disclosure, before obtaining a consumer report for employment purposes about her.

72.     By enacting Section 1681b(b)(2), Congress codified a new right—to information in the form of a standalone disclosure of the employer's intent to obtain a consumer report for employment purposes.

73.     Plaintiff suffered a concrete informational injury because Defendant Stellar failed to provide Plaintiff with information to which she was entitled to by statute, namely a standalone disclosure.

74.     Plaintiff's "inability to obtain [that] information" is therefore, standing alone, "a sufficient injury in fact to satisfy Article III." *Spokeo Inc. v. Robins,* 136 S. Ct. 1540, 1549 (2016).

75.     As to Defendant Osa, Plaintiff's inability to obtain her consumer file disclosure injured her in a concrete way because Osa's conduct robbed her of the ability to learn what information Osa possessed about her, including sources of such information like TransUnion, such that Plaintiff is in as informed-as-possible a position to begin correcting the many errors Osa reported about her.

### Plaintiff's Third Concrete Injury:
### Inability to Learn of the Contents of Her Report and Tell
### Her Side of the Story in Time to Save Her Job.

76.     Defendants' failure to provide timely notice deprived Plaintiff and Class Members of the opportunity to learn about the information in their consumer report and tell Defendant their side of the story before Defendant took adverse action.  Thus, Plaintiff was denied the opportunity to determine if the information contained in her consumer report was accurate, to plead her case, and to understand how it might affect her future efforts to obtain employment.

77.     With these two recognized injuries directly traceable to Defendants' failure to timely provide the notices required by the FCRA, Plaintiff unquestionably has established Article III standing.

**C.     Defendants' Practices And Policies.**

78.     Stellar has created and implemented national, uniform hiring and staffing policies, procedures, and practices under which it and its subsidiaries and vendors operate.

14

Those policies, procedures, and practices cover the use of "background checks" or "consumer reports" to screen potential employees for Stellar and its vendors.

79.     Stellar routinely uses consumer reports to screen prospective employees and those who would work for Stellar.

80.     Stellar also routinely fails to provide applicants with a standalone disclosure of its intent to obtain consumer reports about them. Therefore, any written authorization Stellar obtains is faulty and legally invalid.

81.     Stellar subsequently violates the FCRA with each background check it obtains about an applicant, and did so for each member of the Class described below.

82.     As a matter of practice, Stellar regularly fails to provide copies of the FTC or CFPB notice of rights to job applicants against whom it takes an adverse action based in whole or part on a consumer report, before taking that adverse action.

83.     As a matter of course, Stellar uses the same business process for obtaining and using consumer reports as it did with Plaintiff and members of the Class described below. Stellar routinely as a matter of course takes adverse actions against applicants without first providing them with a copy of the report and summary of their FCRA rights.

84.     As a result of these FCRA violations, Stellar is liable to Plaintiff, and to each Class Member, for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

85.     Stellar's conduct and omissions were willful. Because the FCRA was enacted in 1970, Stellar has had years to become compliant but has failed to do so.

86.     Stellar, a nationwide employer, was aware of obligations under the FCRA as they relate to employment because it hired OCG not only to perform its background checks but also to (attempt to) provide Stellar's adverse-action notices to job applicants.  Stellar is a large corporation with in-house counsel and regularly engages outside counsel, meaning it had ample means and opportunity to seek legal advice regarding its FCRA responsiblities. Stellar therefore knew of the requirements imposed upon it by the FCRA, and failed to craft a system that would ensure compliance with those requirements.

87.     Defendant Osa has created and implemented national, reporting policies, procedures, and practices under which it operates. Those policies, procedures, and practices cover the creation and sale of "background checks" or "consumer reports" to employers like Stellar.

88.     Defendant Osa's policies and procedures flaunt the FCRA at nearly every turn. As shown by Plaintiff's experience, Osa provides reports to employers as a key aspect of its business, yet fails on even the most easy-to-follow FCRA requirements like the provision of file disclosures. Defendant Osa likewise fails to meet the FCRA's accuracy provisions as a matter of course, as its procedures were unable to, for example, know that an individual pictured in one of the criminal files it attributed to Plaintiff was not, in fact, Plaintiff.

89.     TransUnion and Osa have no strict procedures in place designed to ensure the public-record information they report in the employment context is complete and up-to-date. As Plaintiff's case again demonstrates, these Defendants reported to Stellar that Plaintiff had multiple criminal charges that did not belong to her. Had Defendants reported information that was complete and up-to-date, Plaintiff's report would have none of this criminal history in it.

90.     Defendants will therefore be unable to rely on the strict procedures aspect of Section 1681k(a) for meeting the requirements of that portion of the FCRA.

91.     Likewise, as Plaintiff's case again demonstrates, TransUnion and Osa have no process in place to provide at-the-time notice when they report derogatory information for employment purposes.

92.     For TransUnion's part, it turned over derogatory information to Osa to be used in a consumer report for employment purposes, yet did not send Plaintiff a notice at the time it did so.

93.     And, separately, TransUnion did not have in place reasonable procedures designed to assure the maximum possible accuracy of the information it reported to Osa.

94.     When it repackaged the TransUnion information and provided it to Stellar, Osa failed in its separate obligation to provide Plaintiff with at-the-time notice.

95.     As a matter of practice, Defendant Osa refuses to investigate the disputes of consumers like Plaintiff. Osa instead instructs consumers to take their disputes to the potential employers, which is not an appropriate response under the FCRA to a consumer dispute.

96.     Similarly, also as a matter of course, Osa refuses to provide consumers with their file disclosures on request. Such refusal is born entirely from laziness or cost-cutting, as CRAs make no money compiling file disclosures and incurring the expense of sending them to consumers. Understanding that it is easier and cheaper to just ignore consumers' request for their file disclosures, Osa does just that.

97.     None of this is by accident. The FCRA's notice and file-disclosure requirements are simple and easy to follow. But since they cost money for CRAs to follow them, Defendant Osa has chosen the more profit-friendly option of doing nothing.

98.     Defendants have created uniform, consistently applied processes to utterly avoid all of these FCRA-imposed obligations.

99.     As a result of these FCRA violations, Defendants are liable to Plaintiff, and to each Class Member, for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

100.    Defendants' conduct and omissions were willful. Because the FCRA was enacted in 1970, Defendants has had years to become compliant but has failed to do so.

101.    And because Defendants Osa and TransUnion are CRAs and operate under the FCRA's umbrella every day, discovery will show they are aware of the FCRA's obligations and ignore them.

102.    Defendants Osa and TransUnion, operating as nationwide CRAs, are aware of their FCRA obligations because they market themselves to employers like Stellar as invaluable parts of their hiring processes. Defendant Osa is owned and operated by a former FBI agent, so it possess the know-how and resources to learn of the legal obligations for background reporting agencies.

103.    All Defendants have access to in-house and outside counsel, meaning they have ample means and opportunity to seek legal advice regarding their FCRA responsiblities.

Defendants therefore knew of the requirements imposed by the FCRA, and failed to craft a system that would ensure compliance with those requirements.

## V.      LEGAL REQUIREMENTS

### *The FCRA's Requirements for Employers Using Consumer Reports*

104.    The FCRA prohibits the obtaining of consumer reports in any context unless certain requirements are met. The most-fundamental of these requirements in the employment context is the standalone disclosure requirement.

105.    Section 1681b(b)(2) of the FCRA sets out the standalone disclosure requirement:

> **In general.** Except as provided in [circumstances not present here], a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless--
>
> (i)  a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

106.    Failing to provide any disclosure at all of course violates the statute, but so too does the provision of a disclosure that is not standalone. Adding superfluous information, inapplicable state-law notices or warnings, or making the document unnecessarily wordy and confusing likewise violates the statute.

107.    The purpose of this requirement is to give applicants unequivocal notice of the employer's intent to obtain a background check and to further confirm that the consumer authorizes such through his or her signature.

108.    Section 1681b(b)(3)(A) of the FCRA regulates the conduct of any person who uses a "consumer report" to take an adverse action against any employees or prospective employees as follows:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates --
>
> (i)     a copy of the report; and
>
> (ii)    a description in writing of the rights of the consumer under this subchapter, as prescribed by the Federal Trade Commission under section 1681g(c)(3) of this title.

109.    The Act defines adverse action as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee," and "an action taken or determination that is adverse to the interests of the consumer." 15 U.S.C. § 1681a(k)(1)(B)(ii), (iv).

110.    The statute notably does not indicate a decision must be final and irreversible to fit the definition of adverse.

111.    The purpose of § 1681b(b)(3)(A) is to provide a prospective or current employee a sufficient amount of time to review the consumer report, correct any inaccuracies, to notify the prospective employer of these inaccuracies before an adverse action is taken and

generally to discuss the contents of the report with the prospective employer so that the applicant may still be hired.

112.    This statutory requirement was enacted by Congress expressly to protect consumer privacy by restricting the circumstances under which a person (in this instance Stellar) could obtain and use a consumer's personal information consumer report.

113.    In enacting this FCRA provision, Congress also expressly sought to guarantee important material information be provided to Plaintiff and consumers like her with respect to employer use of a consumer report for an employment adverse action.

114.    Plaintiff and each putative Class Member has been substantively harmed and injured by Stellar in the violation of their personal privacy and in the deprivation of the congressionally mandated information.

### The FCRA's Transparency Requirements for Consumer Reporting Agencies

115.    Chief among the FCRA's broad protections are those that permit consumers to learn the information CRAs traffic about them.

116.    The Act therefore requires CRAs to provide, at consumers' request, all information in the consumer's file at the time of the request, including sources of that information that CRAs possess about the requesting consumer. 15 U.S.C. § 1681g(a). This information is commonly called the consumer's "full file disclosure."

117.    It is insufficient to simply provide the consumer with a report the CRA gave to a third party. *See id.*

118.    Notably, there is nothing in the statute that permits a CRA to avoid this duty of full disclosure.

119.    Such a provision was enacted for precisely situations like Plaintiff's. Defendants Osa and TransUnion exchanged inaccurate information about her and provided that information to a potential employer. For Plaintiff to correct those inaccuracies, she has to know the sources involved so she can contact them and have their records revised. If she does not know all the players who had a hand in furnishing information that went into her report, she cannot be certain that she has prevented the inaccuracies from resurfacing on the next report the Defendants, or someone else, create about her.

120.    When Plaintiff contacted Osa and requested her full file disclosure, Osa did not provide it. Instead, all she received was the report provided to Stellar, which does not tell her where the information she received actually came from.

121.    While Defendants will likely claim that the report to Stellar does contain the sources of information, courts for example, it is widely known that CRAs buy bulk criminal-history information from third parties who are not courts.

122.    Without knowing who these third-party vendors are, Plaintiff and other consumers are powerless to correct inaccurate information they may possess and pass-on to others like Defendants Osa and TransUnion.

### *Maximum Possible Accuracy for Consumer Reporting Agencies*

123.    The FCRA imposes on CRAs the requirement that, for every report they create, the employ reasonable procedures designed to assure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b).

124.    Such duty accompanies any report governed by the FCRA, and evinces Congress's intent that CRAs carefully carry-out their businesses such that their reports are as correct as possible.

125.    This accuracy provision applies in every context in which consumer reports are exchanged, meaning it is not limited to solely reports that are issued for employment purposes like some of the other provisions at issue here.

126.    Defendants here fell short of those duties, as their procedures unreasonably failed to parse the information they possessed to ensure that they reported records attributable to Plaintiff and excluding records belonging to others.

127.    Discovery will show, for example, that original court records contained the date of birth of the individual to whom the inaccurate criminal records Defendants Osa and TransUnion attributed to Plaintiff truly belong, yet these Defendants instead relied on incomplete criminal records obtained from an unknown third party.

128.    Had Defendants Osa and TransUnion consulted the original court records, they could have used the complete date of birth those records contained to exclude records not belonging to Plaintiff.

129.    As another example, some of the records contained a mugshot of the criminal defendant. Had Defendants Osa and TransUnion implemented a system to compare such mugshot with a picture of Plaintiff, they would have known immediately that those records belonged to someone else.

130.    The failures of Osa and TransUnion on at least these two points show their procedures for compiling the records and reporting them to Stellar were unreasonable and error-prone.

131.    Discovery will show Defendants Osa and TransUnion adopted these inadequate procedures solely for profits' sake, and it is more costly to obtain original court records or compare photographs. Defendants prefer the error-prone methods they use because they are cheaper and allow for greater profit per report.

### The Requirement for Investigation of Disputes by Consumer Reporting Agencies

132.    Part and parcel of the transparency requirement is that CRAs like Defendant Osa take disputes seriously and work to correct inaccuracies consumers identify in those disputes.

133.    Congress codified its expectations in this regard, requiring in the FCRA that CRAs investigate disputes, and delete any information they find to be inaccurate, incomplete, or unverifiable. 15 U.S.C. § 1681i(a)(1), (5).

134.    Osa outright ignores disputes and refuses to do anything. As Plaintiff's circumstances confirm, Osa keeps all of the information it possesses secret, and refuses to engage in any investigation of disputes whatsoever. Such is the antithesis of the FCRA's requirement that CRAs actually investigate disputes.

### *The Notice Requirement in the Employment Context*
### *for Consumer Reporting Agencies*

135.    15 U.S.C. § 1681k(a) requires CRAs like Osa and TransUnion to provide timely and lawful notice that they are furnishing an employment purposed consumer report that contains derogatory information at the time they did so.

136.    This important requirement is intended to provide consumers immediate notice of the furnishing of the employment report and details necessary to preemptively contact the consumer-reporting agency to obtain and, as appropriate, correct information in the furnished report. It also was intended to alert the consumer to the employer's use of the report to provide consumers the opportunity to address any concerns or derogatory history in the report directly with the employer.

137.    Though two CRAs were involved in the creation and provision of the report about Plaintiff to Stellar, and that report contained numerous entries of negative criminal history that would likely adversely affect Plaintiff's ability to be employed by Stellar, Plaintiff never received any notice from the Defendants that they were furnishing such report.

138.    Plaintiff alleges that Defendants did not attempt for any consumer to follow the option available at 15 U.S.C. § 1681k(a)(2). The alternative would only be applicable if Defendants had in place before any report was furnished strict procedures designed to ensure that it actually contacted the original source of public records information (*e.g.*, the Court clerk or the DMV) before furnishing a report which includes such information to insure that the information it included in its reports was the complete and up-to-date public record. A § 1681k(a)(2) option is not available to Defendants because the public records they furnish to third parties are summaries, indexes, or partial records. They never furnished the complete and

up-to-date public record as Section 1681k(a)(2) envisions. That Section is thus inapplicable to the consumer reports at issue in this case.

## VI.      **DEFENDANT STELLAR ACTED WILLFULLY**

139.     Stellar knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission and Consumer Financial Protection Bureau. Stellar obtained or had available substantial written materials, which apprised it of its duties under the FCRA.

140.     An employer like Stellar is absolutely forbidden from obtaining a background check without first providing a standalone disclosure. Such has been the subject of considerable litigation, giving Stellar ample notice of the requirement and the ability to become compliant.

141.     Before a person takes an adverse employment action, it must provide two documents to the prospective employee. *See* Letter from Clark W. Brinckerhoff to Erick J. Weisberg (June 27, 1997), FTC Informal Staff Letter ("Brinckerhoff Letter II") (noting that taking action a period of five business days after notice "appears reasonable."); *Williams v. Telespectrum, Inc.,* Civil Action No. 3:05cv853 (E.D. Va. 2006), Report and Recommendation of Magistrate Judge Hannah Lauck dated November 7, 2006, adopted by Judge R. Payne January 8, 2005, (holding that a user of a consumer report must provide to the consumer a copy of the report and disclosure of rights a sufficient amount of time before it takes adverse action so that the consumer can rectify any inaccuracies in the report, and simultaneous provision of the report does not satisfy this requirement); *Kelchner v. Sycamore Manor Health Ctr.*, 305 F.

Supp. 2d 429, 435 (M.D. Pa. 2004); (holding a reasonable period for the employee to respond to disputed information is not required to exceed five business days following the consumers receipt of the consumer's report from the employer); *Beverly v. Wal-Mart Stores, Inc.*, No. 3:07-cv-469 (E.D. Va. 2009) (consent Order providing ChoicePoint mailing of Adverse Action Notices on behalf of its customers shall occur no earlier than five business days after the mailing of the pre-adverse action notices).

142.    To ensure knowing compliance with the FCRA, Congress requires that before any consumer reporting agency may provide consumer reports on an applicant, the reporting agency must have obtained a certification from the employer that it will comply with 15 U.S.C. § 1681b(b)(3) whenever the employer decides to take adverse action based in whole or in part on the consumer report.  15 U.S. C. § 1681b(b)(1)(A).

143.    Discovery will show that Stellar knowingly executed a certification providing that it would comply with the various provisions of the FCRA, including those regarding the standalone disclosure and whenever adverse action was contemplated or taken based in whole or in part on information contained in a consumer report.

144.    Despite its certification, Stellar knowingly violated 15 U.S.C. §§ 1681b(b)(2) and (b)(3).

145.    Despite knowing of these legal obligations, Stellar acted consciously in breaching its known duties and depriving Plaintiff and other members of the putative Classes of their rights under the FCRA.

146.    As a result of these FCRA violations, Stellar is liable to Plaintiff and to each Class Member for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. §

1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) for the violations

alleged herein, and for attorneys' fees and costs pursuant to §§ 1681n and 1681o

## VII.   DEFENDANTS OSA AND TRANS UNION ACTED WILLFULLY

147.   Likewise, Defendants Osa and Trans Union knew or should have known about

their legal obligations under the FCRA. These obligations are well established in the plain

language of the FCRA and in the promulgations of the Federal Trade Commission and

Consumer Financial Protection Bureau. Defendants obtained or had available substantial

written materials, which apprised them of their duties under the FCRA.

148.   Defendants Osa's and Trans Union's willful conduct is further reflected by,

among other things, the following facts:

a.   Defendants Osa and Trans Union provided no notice to Plaintiff that they were providing to Stellar a consumer report that contained negative criminal history at the time they did so (or at all, for that matter). This failure was either knowing or reckless;

b.   Defendant Osa took no steps in response to Plaintiff's dispute of the inaccuracies in her Stellar report. Such failures are at least reckless, if not knowing;

c.   Defendants Osa and Trans Union do not have in place reasonable procedures designed to assure the maximum possible accuracy of information they report. As with Plaintiff, a criminal record Defendants stated belonged to her included a picture of an individual that was not Plaintiff. A reasonable procedure would have accounted for the presence of the picture, and would have allowed a comparison of the picture in the court records with one of Plaintiff. Such failures are at least reckless, if not knowing;

d.   Defendant Osa does not provide file disclosures. Turning over to a consumer the same report that a CRA has given an employer is not the same thing as providing "[a]ll information in the consumer's file at the time of the request," as well as "[t]he sources of the information." 15 U.S.C. § 1681g(a)(1), (2). This is one of the simplest FCRA requirements to follow, as all it demands is that a CRA give consumers everything in their

possession and tell consumers where they got it. Such failures are at least reckless, if not knowing;

e.    Defendant Osa likewise does not investigate disputes. Osa did nothing with Plaintiff's dispute, telling her instead to take-up the inaccuracies with Stellar. Again, this failure runs afoul of one of the FCRA's easiest-to-follow provisions, making the failure knowing and therefore willful;

f.    The FCRA was enacted in 1970, giving Defendants Osa and Trans Union 50 years to become compliant;

g.    Defendants Osa and Trans Union are companies with access to legal advice through their own general counsel's office and/or outside litigation counsel. Indeed, Mr. Osa is a former FBI agent. Yet, there is no contemporaneous evidence that Osa determined that this conduct was lawful;

h.    Defendants Osa and Trans Union knew or had reason to know that their conduct was inconsistent with FTC guidance, case law, and the plain language of the FCRA;

i.    Defendants Osa and Trans Union voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and

j.    Defendants Osa's and Trans Union's violations of the FCRA were repeated and systematic, and they were carried out not by accident or oversight, but exactly as Defendants intended.

149.    As a result of these FCRA violations, Defendants are liable to Plaintiff and to each Class Member for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) for the violations alleged herein, and for attorneys' fees and costs pursuant to §§ 1681n and 1681o.

150.    For Plaintiff's individual claims, Defendants are liable for Plaintiff's actual damages pursuant to 15 U.S.C. § 1681o, plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) for the violations alleged herein, and for attorneys' fees and costs pursuant to §§ 1681n and 1681o.

# VIII.   <u>CLASS ACTION ALLEGATIONS</u>

## BACKGROUND CHECK DISCLOSURE CLASS – VIOLATION OF THE FCRA, § 1681b(b)(2)

151.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action for herself and on behalf of the following putative class (the "Background Check Disclosure Class"), of which she is a member:

> **All consumers in the United States who applied for a position or promotion at Stellar for the period five years before the filing of this lawsuit.**

## PRE-ADVERSE CLASS – VIOLATION OF THE FCRA, § 1681b(b)(3)

152.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action for herself and on behalf of the following putative class (the "Pre-Adverse Class"), of which she is a member:

> **All consumers in the United States against whom Stellar took adverse employment action based, in whole or in part, on information contained in a consumer report obtained within five years preceding the filing of this lawsuit.**

## FILE DISCLOSURE CLASS – VIOLATION OF THE FCRA, § 1681g

153.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action for herself and on behalf of the following putative class (the "File Disclosure Class"), of which she is a member:

> **All consumers in the United States who requested their consumer file disclosures from Osa within the period five years before the filing of this lawsuit through the date on which the Court certifies a class in this action.**

**DISPUTE INVESTIGATION CLASS – VIOLATION OF THE FCRA, § 1681i**

154.   Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action for herself and on behalf of the following putative class (the "Dispute Investigation Class"), of which she is a member:

> **All consumers in the United States who contacted Osa and disputed information in their consumer reports.**

**1681k NOTICE CLASS – VIOLATION OF THE FCRA § 1681k(a)**

155.   Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action for herself and on behalf of the following putative class (the "1681k Notice Class"), of which she is a member:

> **All consumers in the United States (1) for whom Defendants Osa and Transunion created consumer reports for employment purposes, (2) which reports contained public-record information likely to have an adverse effect on those individuals' employment prospects, and (3) to whom Defendants Osa and Transunion did not provide to those consumers contemporaneous notice that they were providing such reports.**

156.   **Numerosity.** The Classes are so numerous that joinder of all members is impracticable. Based on information and belief, the Classes are comprised of at least thousands of members who are geographically dispersed throughout the country so as to render joinder of all Class Members impracticable. The names and addresses of the Class Members are identifiable through documents maintained by Defendants, and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

157.   **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all members of the Classes. The total focus of the litigation will be Defendants' uniform conduct and procedures; whether Defendants

provided the required notices and disclosures, and investigated disputes; when it did so, if at all; and, whether Defendants acted willfully in their failure to design and implement procedures to assure compliance with the FCRA provisions at issue. The appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. § 1681n is a common question for members of the Classes.

158.   **Typicality.** Plaintiff's claims are typical of the other Class Members' claims. As described above, Defendants use common practices and automated systems in committing the conduct that Plaintiff alleges damaged her and the Classes. Plaintiff seeks only statutory and punitive damages for her classwide claims and, in addition, Plaintiff is entitled to relief under the same causes of action as the other members of the Classes. Defendants uniformly breached the FCRA by engaging in the conduct described above, and these violations had the same effect on each member of the Classes.

159.   **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff's interests coincide with, and are not antagonistic to, other Class Members' interests. Additionally, Plaintiff has retained Counsel experienced and competent in complex, commercial, multi-party, consumer, and class-action litigation. Plaintiff's Counsel has prosecuted complex FCRA class actions across the country, including repeatedly in this District and Division.

160.   **Superiority.** Questions of law and fact common to the Classes predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove

burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the members of the Class to, individually, effectively redress the classwide wrongs done to them, particularly in light of the fact that the claims are in part based on the failure of Defendants to give Class Members the proper disclosure and notice. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts.

161.    Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

162.    There are no known unusual legal or factual issues that would cause management problems not normally and routinely handled in class actions. Because Class Members in each Class that Plaintiff seeks to represent may be unaware that their rights have been violated or, if aware, would be unable to litigate their claims on an individual basis because of their relatively small damages, a class action is the only practical proceeding available.  To Plaintiff's knowledge, no other similar actions are pending against Defendants. This forum is appropriate for litigation because Defendants conduct business in this District and the conduct complained-of herein occurred here.

## IX.   CAUSES OF ACTION

### COUNT ONE: VIOLATIONS OF 15 U.S.C. § 1681b(b)(2) BY STELLAR
### Class Claim

163.   Plaintiff incorporates by reference paragraphs 1-9, 35-66, 70-75, 78-86, 104-114, 139-146, 151, and 156-162, as though fully set forth herein.

164.   Stellar's failure to provide members of the Class with a standalone disclosure before obtaining consumer reports for employment purposes violated 15 U.S.C. § 1681b(b)(2)(A).

165.   If Stellar then obtained an authorization from applicants, that authorization fails because it was not based on an appropriate disclosure.

166.   Stellar's obtaining and use of Class Member consumer reports without compliance with § 1681b(b)(2) violates 15 U.S.C. § 1681b(f) as well as § 1681b(b)(2).

167.   The conduct, action, and inaction of Stellar was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Disclosure Class members under 15 U.S.C. § 1681b(b)(2).

168.   Defendant knew or should have known of its legal obligations under the FCRA. These obligations are well-established in the plain language of the statute and published circuit court authority. Defendant obtained or otherwise had available substantial written materials that apprised Defendant of its duties under the FCRA. Any reasonable employer knows of the existence of these FCRA mandates, or can easily discover their substance.

169.   Moreover, at the time Defendant failed to follow 15 U.S.C. § 1681b(b)(2), a plethora of FTC opinions and case law advising how Defendant should conduct itself existed.

**COUNT TWO: VIOLATIONS OF 15 U.S.C. § 1681b(b)(3)(A) BY STELLAR**
<u>**Class Claim**</u>

170.    Plaintiff incorporates by reference paragraphs 1-10, 35-66, 70-77, 78-86, 104-114, 139-146, 152, and 156-162, as though fully set forth herein.

171.    Stellar's failure to provide members of the Class with a copy of the consumer report upon which it based its decision to take the adverse action, prior to taking such action, violated 15 U.S.C. § 1681b(b)(3)(A).

172.    Stellar's obtaining and use of Class Member consumer reports without compliance with § 1681b(b)(3) violates 15 U.S.C. § 1681b(f).

173.    The conduct, action, and inaction of Stellar was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Adverse Action Class members under 15 U.S.C. § 1681b(b)(3)(A). Defendant knew or should have known of its legal obligations under the FCRA.  These obligations are well established in the plain language of the statute and published circuit court authority.  Defendant obtained or otherwise had available substantial written materials that apprised Defendant of its duties under the FCRA.  Any reasonable employer knows of the existence of these FCRA mandates, or can easily discover their substance.

174.    Moreover, at the time Defendant failed to follow 15 U.S.C. § 1681b(b)(3)(A) a plethora of FTC opinions and case law existed.

## COUNT THREE: VIOLATIONS OF 15 U.S.C. § 1681g BY OSA
### Class Claim

175.    Plaintiff incorporates by reference paragraphs 3-4, 11-22, 35-69, 87-103, 115-138, 147-149, 153, and 156-162, as though fully set forth herein.

176.    Osa's failure to provide members of the File Disclosure Class with their full consumer files upon request violated 15 U.S.C. § 1681g(a).

177.    Osa failed to produce the information they possessed, despite each consumer's valid request for a copy of their file pursuant to § 1681g(a). Osa also failed to provide Plaintiff notice of her rights under the FCRA, as required by § 1681g(c)(2).

178.    The conduct, action, and inaction of Osa were willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Osa acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other File Disclosure Class Members under 15 U.S.C. § 1681g.

179.    As a result of Osa's conduct, Plaintiff has suffered particularized and concrete injuries, including being robbed of her congressionally mandated right to information to which Congress has deemed her entitled. Access to this information is important because (1) it is highly personal in nature, (2) it is maintained and reported by third parties with who Plaintiffs have no pre-existing relationship, (3) it is ultimately sold to third parties to whom Plaintiff is applying for employment or credit without Plaintiff having the opportunity to view it in advance, (4) it is potentially determinative information in extremely important interactions—applications for employment or credit, and (5) Osa should include a notice of consumers' substantive rights under applicable federal law.

180.     Having been denied this important information, Plaintiff was harmed because she did not know what information was circulated about her and was subsequently denied an opportunity to correct inaccurate or obsolete information. As a result, Plaintiff was at increased risk to be denied employment.

181.     Osa knew or should have known of its legal obligations under the FCRA. These obligations are well-established in the plain language of the statute and published circuit court authority. Osa obtained or otherwise had available substantial written materials that apprised Osa of its duties under the FCRA. Any reasonable CRA knows of the existence of these FCRA mandates, or can easily discover their substance.

182.     Moreover, at the time Osa failed to follow 15 U.S.C. § 1681g, a plethora of FTC opinions and case law advising how Osa should conduct itself existed.

183.     Plaintiff is entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Osa in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

184.     As a result of these FCRA violations, Osa is liable to Plaintiff for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and for attorneys' fees and costs pursuant to § 1681n.

**COUNT FOUR: VIOLATIONS OF 15 U.S.C. § 1681i BY OSA**
**Class Claim**

185.     Plaintiff incorporates by reference paragraphs 3-4, 11-22, 35-69, 87-103, 115-138, 147-149, 154, and 156-162, as though fully set forth herein.

186.     Osa's failure or refusal to investigate disputes of Plaintiff and members of the Dispute Investigation Class violated 15 U.S.C. § 1681i.

187. The FCRA imbues consumers with the absolute right to dispute inaccurate information in reports CRAs create. Such right is one of the most-fundamental the FCRA provides, with the aim being to permit consumers a role in ensuring that accurate information is reported about them

188. Osa robbed Plaintiff and Dispute Investigation Class of their statutory right to dispute inaccurate information those entities were reporting about them. Plaintiff and Class Members therefore suffered a concrete, in-fact injury—they sought to dispute inaccuracies with Osa, and Osa refused them that right.

189. The conduct, action, and inaction of Osa was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Adverse Action Class members under 15 U.S.C. § 1681b(b)(3)(A). Defendants knew or should have known of its legal obligations under the FCRA. These obligations are well established in the plain language of the statute and published circuit court authority. Osa obtained or otherwise had available substantial written materials that apprised it of its duties under the FCRA. Any reasonable CRA knows of the existence of these FCRA mandates, or can easily discover their substance.

190. Moreover, at the time Osa failed to follow 15 U.S.C. § 16811 a plethora of FTC opinions and case law existed.

**COUNT FIVE: VIOLATIONS OF 15 U.S.C. § 1681k(a)(1) BY**
**OSA AND TRANS UNION**
<u>Class Claim</u>

191.    Plaintiff incorporates by reference paragraphs 3-4, 11-22, 35-69, 87-103, 115-138, 147-149, 155, and 156-162, as though fully set forth herein.

192.    Defendants failed to send the required § 1681k(a)(1) notice to Plaintiff and each member of the 1681k Notice Class at the time that they provided an employment-purposed consumer report to  a user that contained public record information of the type that is likely to have an adverse effect on a consumer's ability to obtain or maintain employment.

193.    Defendants do not ever maintain strict procedures designed to ensure that they only furnish complete and up-to-date public records. In fact, they uniformly fail to sell or furnish the complete public record and instead only obtain and provide the very limited data available through a batch and/or automated pickup of public records.

194.    Defendants' failure to timely provide the required FCRA notices to Plaintiff and the putative 1681k Notice Class members violated 15 U.S.C. § 1681k(a)(1).

195.    Defendants' similar failure to maintain strict procedures designed to ensure that it did not furnish incomplete or out of date public records regarding Plaintiff and the putative class members violated 15 U.S.C. § 1681k(a)(2).

196.    The conduct, action, and inaction of Defendants were willful, rendering Defendants liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

197.    As a result of Defendants' conduct, Plaintiff and the putative class have suffered particularized and concrete injuries, including being robbed of their congressionally mandated

right to information to which Congress has deemed them entitled. Access to this information is important because (1) it is highly personal in nature, (2) it is maintained and reported by third parts with whom Plaintiff has no pre-existing relationship, (3) it is ultimately sold to third parties to whom Plaintiff is applying to employment or credit without Plaintiff having the opportunity to view it in advance, and (4) it is potential determinative information in extremely important interactions—applications for employment or credit.

198.    Having been denied this important information, Plaintiff and the putative class were harmed because they did not know what information was circulated about them and by whom and were subsequently denied an opportunity to correct inaccurate or obsolete information. As a result, Plaintiff was at increased risk to be denied employment.

199.    Plaintiff and other members of the 1681k Class are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

200.    As a result of these FCRA violations, Defendants are liable to Plaintiff and to each Class Member for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and for attorneys' fees and costs pursuant to § 1681n.

201.    As a result of Defendants' forgoing actions Plaintiff suffered concrete economic injuries when she lost a job opportunity and income.

### COUNT SIX: VIOLATIONS OF 15 U.S.C. § 1681e(b) BY
### OSA AND TRANS UNION
### <u>Individual Claim</u>

202.    Defendants Osa and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports and credit files they published and maintained regarding Plaintiff by erroneously listing multiple criminal charges that belonged to someone else or were otherwise inaccurate in terms of their outcomes.

203.    As a result of Defendants' conduct, Plaintiff suffered actual damages such as lost wages, frustration, stress, mental distress, loss of sleep, and lost time attempting to correct the inaccuracies.

204.    Defendants' violation of 15 U.S.C. § 1681e(b) were willful, rendering them liable pursuant to 15 U.S.C. § 1681n.  In the alternative, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

205.    Plaintiff is entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

### X.    <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff and the Classes pray for relief as follows:

a)    That an order be entered certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and her Counsel to represent the Classes;

b)      That judgment be entered for the proposed Class against Defendant Osa for statutory damages and punitive damages for violations of 15 U.S.C. § 1681g, pursuant to 15 U.S.C. § 1681n;

c)      That judgment be entered for the proposed Class against Defendant Osa for statutory damages and punitive damages for violations of 15 U.S.C. § 1681i, pursuant to 15 U.S.C. § 1681n;

d)      That judgment be entered for the proposed Class against all Defendants for statutory damages and punitive damages for violations of 15 U.S.C. § 1681k(a)(1), pursuant to 15 U.S.C. § 1681n;

e)      That judgment be entered for Plaintiff individually for her actual damages as well as punitive damages for Defendants' violations of 15 U.S.C. § 1681e(b);

f)      That the Court award costs and reasonable attorneys' fees, pursuant to 15 U.S.C. §§ 1681n and 1681o;

g)      That the Court grant such other and further relief as may be just and proper, including but not limited to any equitable relief, that may be permitted.

**A TRIAL BY JURY IS DEMANDED.**

Dated this 22nd day of June, 2020.

Respectfully submitted,

**BRANDON HILL**
Florida Bar No. 37061
**LUIS A. CABASSA**
Florida Bar No. 0053643
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, FL 33602
Telephone: 813-224-0431
Facsimile: 813-229-8719
Email: bhill@wfclaw.com
Email: gnichols@wfclaw.com

and

**CRAIG C. MARCHIANDO**
Florida Bar No. 1010769
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel. – (757) 930-3660
Fax – (757) 930-3662
Email: craig@clalegal.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 22nd day of June, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, including:

Nancy A. Johnson, Esquire
LITTLER MENDELSON, P.C.
111 North Orange Avenue Suite 1750
Orlando, FL 32801
E-mail: najohnson@littler.com
*Attorneys for Defendant*

/s/ Brandon J. Hill
**BRANDON J. HILL**